Document 5-13-03-01-WC Brian Mathis v. Workers' Compensation Commission, U.S. Steel, F.A.C.E. Mathis, you may proceed. Good morning. May it please the Court, Mr. Key. My name is Mary Mathis and I represent the petitioner, Brian Mathis. Your Honors, the Commission ruled against my client on his claim in this case based on accident arising out of, as well as, causal connection of the condition of ill-being in his left hip on the September 14, 2008 accident. Now, I realize I have a tough row to hoe to convince you on a manifest way to the evidence case such as this that the Commission got it wrong. Because not only the findings of fact, but also reasonable inferences that are drawn by the Commission in reaching its decision are accorded deference by this Court. You might want to throw in a third element of a hurdle, and that is the credibility of the witnesses, because it's clear from the decision the Commission had some problems with the truthfulness and veracity of the claimant's testimony. Yes, Your Honor, and that gets to my point that reasonable inferences are only reasonable if they are not based on speculation. And I believe in this particular case there were several incidences where speculation was involved in the determinations made by the arbitrator which were then affirmed by the Commission. Now, with regard to the accident arising out of standard of proof, there was direct and unrebutted testimony by the petitioner that there was water on the steps leading out of the Nash Street locker room, especially at the end of the shift where employees take showers and change into their street clothes before they leave the premises. I think the Commission was troubled by the fact that he had not mentioned it earlier in early reports, and also specifically they were troubled by the fact that he didn't mention the water being on the steps until the first day of the arbitration hearing. Is that not true? Yes, Your Honor, but in terms of what he did report, whether it was on the accident report or whether it was to the medical providers he treated with after the accident, he consistently said, I slipped and fell. Now, if you are required to say, I slipped and fell on water in order to seek treatment from a medical provider, that's unreasonable. He didn't say, my leg gave out. He said, I slipped and fell. And I think to that extent, when you combine that with the fact that we've got an area of the Respondent's plan where water is known to be on the steps, particularly at change of shift time, which my client is aware of. There's got to be some proof of that, would there not be? Because we have a whole plethora of cases, as you know, merely because somebody slips at work doesn't automatically allow a claimant to recover, correct? Correct, Your Honor. And water being on the steps would be a situation where it would be a condition that is greater than a risk that the general public faces when they go down the stairs. And I think it would be fine to agree with you if, in fact, you could establish the water was there on the occasion of the claimant's slip. That's the rub in this case. Well, and Your Honor, this was the Respondent's premises. They are quite familiar with the fact that this is the locker room area. This is the area where the employees... What is the evidence that there was water on the steps? And I'm sympathetic to your view that when you're seeking medical treatment, whether there was water or not on the steps is irrelevant at best, as to the type of treatment you're going to get for a slip and fall. In terms of, you know, it's just not a relevant question for the medical community. But where is the evidence that there was this defect in the stairs? The testimony of the claimant, correct? Yes, Your Honor. It was the testimony of the claimant. And there was no testimony from any other witnesses in this trial besides my client. And the Commission basically said they didn't believe it. They didn't believe that he could have lost consciousness and remember that he felt water. And that's another area where I'm talking about an inference that's based on speculation. For the arbitrator and the Commission then to affirm, the arbitrator's finding that the fact that my client temporarily lost consciousness necessarily implies that he wouldn't remember that he had water on his hand after the accident. I mean, that's rife speculation. There's no medical opinion to that effect, that because you may have struck your head, you're not going to remember anything that happened afterwards. Well, you've returned to consciousness, haven't you, at that point? Yes, exactly. And my client testified that after he had laid there for a few minutes and was attempting to stand back up on the stairs, he placed his hand on the riser of the stairs and he felt that it was wet. That was his testimony at trial to substantiate the fact that there was water on the stairs. That and my client's testimony that it was well known that at this area of the plant, outside of the shower room where the employees cleaned up after work, that there was going to be water on the stairs. Generally speaking, okay, would you concede at least that the case here stands and falls on the claimant's testimony? He testified there was water. Did anybody else come in and testify there was water on this occasion?  Okay. And generally speaking, you know, that could carry the day. If the commission, for whatever reason, in assessing the credibility and believability of a claimant, doesn't believe that claimant, do we announce a decision that on the credibility of the commission, we believe the commission was truthful, or we believe the claimant was truthful, the commission said he wasn't, therefore we substitute our judgment and the claimant wins? Generally speaking, answering that direct question, yes, you're right. But I think you need to look at all of the inferences that the commission made with regard to my client's credibility and find out whether they were reasonable or not. What inferences were made? Well, not only the fact that, well, let's directly look at what other evidence there was available about the water on the stairs. We had two witnesses whose names were put on the accident report that my client filled out the very day he had the accident. This is a large corporation, U.S. Steel. They've been in business for years and years and years. They have the benefit of having this accident report from day one with two witnesses listed on there. Now, don't you think that it's reasonable to assume that the respondent, someone in their risk assessment department, would have talked to these gentlemen to see if perhaps they could shed some light on whether there was a dangerous... They have no burden. The burden is totally on you, the claimant. No, you're right, Your Honor. They have no burden to call those witnesses, but there is an inference that you can draw from the fact that they didn't call those witnesses. Now, there's a case where I think you're a little confused on the foundational elements. You can have that inference drawn against the other side if you can show through the control and you can demonstrate that you also could not necessarily get those witnesses in. Is there anything you're representing to us that precluded you or prohibited you from calling? No, Your Honor, but if those witnesses were going to testify the same as my client, what need would there be for my client to offer cumulative evidence? Pretty obvious right now, isn't it? Yes, in hindsight, yes. I mean, they rejected your client's testimony and it would be a whole different case if two other people would have come in and said, yes, we saw water on the stairs. But that's what I'm saying. Well, I think what you really want to focus on is that there's no basis for them, what's wrong with your client's testimony? That's what you're saying. It should be sufficient. Yes, Your Honor, that's exactly right. And that they've made impermissible inferences that somehow the claimant is not credible. Yes, I believe they may. And is there anything in the record that would support a finding that the claimant is not credible? Is there anything... The claimant is not credible. And that's where you've got to go. Well, you're going to say no. But we don't know. Yeah, I'm saying that my client's testimony supports a finding that he was credible on the answers that... Can you explain why the claimant never indicated at any time before the commencement of the arbitration hearing anything about water? I think that's, quite frankly, what was troubling to the commission and the arbitrator. Well, and Your Honor, my client is a layman. For him to now look back and say, yeah, I should have said something about there was water on the steps when I went to the doctor, or I should have put there was water on the steps when I filled out my accident report. He's not well-versed in workers' compensation. He knows that he slipped and fell on the steps. He knew that there's water on these steps. He even stated that Dr. Parker at the Beter Clinic knows there's water on the steps. He testified that he had an aha moment. The moment he woke up from unconsciousness, he felt the water. He knew immediately the water was connected to this fall, and he never tells anybody. Well, Your Honor, I think what he said was after he woke up, after it was time to get up, he placed his hand down on the riser and felt water. And he knew the water had some role in this. Yes, but he knew that from the very beginning. In fact, his testimony talked about how he was holding on to the stairs because he knew there's, generally speaking, at quitting time, after the guys are showering, there's likelihood that there's going to be water on the stairs. But he didn't think too much about it because he was holding on to the stairway. I mean, he understood that there was water here, but to place on him a burden that, unless you say there's water on the steps, you're not going to recover this on this claim, is a burden on a layman that I don't think the court should be placing. During the course of the hearing, did he testify that he didn't realize that he had anything wrong with his hip prior to his fall? I think that testimony was also misconstrued by the commission, Your Honor. He was particularly questioned on direct examination about treatment with a Dr. Charles King, who's a chiropractor. And he said that that treatment was mainly for his back. And the arbitrator, the commission, turned that into a situation where he was denying that he ever had any problem with his left hip prior to this accident. And that couldn't be further from the truth. He testified that in 2001 he had suffered a fall and fell onto his left hip. In the records that shows the accident report that he filled out, he said that at this time that he was already on restrictions because he was having a problem with his left hip. So I think that inference that was drawn by the commission was also not supported by the testimony when it is read in its entirety. Because it would appear as if the commission found that his testimony was that he didn't realize that there was anything wrong with his hip prior to the fall, when in fact there was a plethora of medical records that suggested he'd been treated for hip problems. And again, Your Honor, I'm pointing back to the testimony about Dr. King. That had to do with his treatment back in March of 2008 where he had suffered a fall. His leg went out on him. He went to see a chiropractor. The chiropractor said, you really ought to be checked out for a pinched nerve. He went to Dr. Brunch. She sent him to have an MRI on his lumbar and thoracic spine. And sure enough they found a herniated disc. He was evaluated as to whether he was a surgical candidate by a neurosurgeon. He said, no, there's a herniation at L405, but it's not surgical. So did he have problems with his hip before the fall or no? Yes, Your Honor, he did. And my point is that my client did not deny that he had problems with his left hip prior to this accident. He referenced that he had a fall in 2001 on that left hip. He may have been mistaken about in 2006 whether it was the right hip or the left hip that he was having problems with. But if you look at the records from Dr. John Sheridan, an orthopedic surgeon who evaluated him in 2006, you'll see that he was being looked at for arthritis in both of his hips at that point. And in fact, Dr. Sheridan found that the left hip may have been worse than the right, but he did in fact have arthritis in both hips. Now, he was incorrect. He may be a bad historian as to whether the right hip was the problem at the time versus the left hip. But my client never denied that he had problems with his left hip prior to this accident. He even said so in his accident report that he was getting therapy. So your response is his memory was a little bit foggy over which hip? Yes, in 2006. But in terms of what he was being treated for, the physical therapy that he had been ordered in August of 08 by Dr. Bruntz, his family care doctor, that was for arthritis in both hips. That was also for his back complaints. That is what Dr. Bruntz saw after she had had the benefit of Dr. Sheridan's consult report, Dr. Yoon's consult report. Well, see, to summarize, to you, you're explaining these as a mere lapse in memory. To the commission, I think it's troubling on the veracity and believability of the claimant. Only the lapse in memory as to whether it was right hip versus left hip in 2006. Well, we have right hip, left hip, water, no water. We have several instances where the memory seems to not be there. Well, I don't agree that the memory doesn't seem to be there with regard to the water. He testified that there were two gentlemen standing over him when he regained consciousness. They said, you need to sit there for a few minutes. He did. When he put his hand down to help himself up, that's when he felt the water. I don't see that that is inconsistent whatsoever. You'll have time on reply. Thank you. Thank you very much. Please, as a court, Michael Keefe on behalf of Appley U.S. Legal Counsel. Obviously, Petitioner has that burden at the time of arbitration to demonstrate a work-related accident as well as prove the causal connection. I think both are in play here. And obviously, we're now faced, since we've left the commission, that heightened level of manifest weight. As counsel mentioned, it's a high burden when you argue first. The petitioner did have a number of opportunities before the day of arbitration to mention either the word shower and or water. And neither of those words are present in the medical records. They're not present in the accident report. The word slip doesn't necessarily mean slipped on water. I'm not certain how we are somehow put on notice that we should have investigated that. It's the first time we heard it. What if he would have sat down the day of arbitration and said, I slipped on a bolt? Or, I slipped on a piece of plastic? There's no possible way for us to know exactly what it was. It's unrebutted by testimony by respondent because we had no idea until the day we sat down. The employer had noticed that he'd fallen on the stairs. No question that he had. And had an opportunity to go and look at the stairs. And possibly he did. But there's no evidence of a record that noted that there was or there was not. The two witnesses certainly could have aided in that, either by testimony. And you know the two witnesses were there? I don't recall the accident report saying the two witnesses identified water on the stairs. There were two gentlemen standing over him as he fell. We don't know whether they were facing the other way. We don't know if they heard this gentleman fall and turned around. The accident report doesn't say these two men saw me fall on water. It doesn't say that any place. There were two gentlemen there. And again. Yeah, what you're saying is they're only identified as occurrence witnesses but we have no idea what they saw. Right. I don't know what they saw. Their names are there. It appeared to be a misstep or a somehow slip on the stairs. But I don't know what those two gentlemen saw or didn't see. Nobody talked to either one of them as far as we know. That's correct. That's exactly right. Likewise with the medical records. In a situation like this, just gentlemen from the time that this fall had occurred, the time that it fell to the time that we sit down on arbitration, he has seen half a dozen doctors. He's filled out intake forms for Dr. Lux. He's filled out a number of things. He's filled out an accident and sickness benefit form. None of those things mention water. I don't know that one would necessarily expect him to say it was water that he slipped on. A doctor doesn't even know that. He just needs to know he slipped and he said he slipped at work. But the more difficult problem is the accident report. The more difficult problem is the absence of any reference to water on the stairs in the accident report. One would expect that the mechanism of injury would be in an accident report because one would expect him to believe the employer would cure it. Agreed. It's the closest in time to when it had occurred. I'm just, you know, with intake form, I think that there were other ways to sort of correct if it was sort of a lax at the time that he had written it down. And quickly on causal connection, if I could move to that, this gentleman did in fact have physical therapy and massage therapy, not only on his back but his left hip two weeks before this incident occurred. He didn't see Dr. Sheraton inquiring about resurfacing of his left hip in 2006. He didn't deny it. What he said was, I'm certain that it was my right. I'm certain it was my right. Well, maybe Dr. Sheraton's records are wrong, but we all know the left hip was worse than the right. That was noted just a moment ago. He has some first aid immediately following the accident, and then his medical treatment as it relates to the left hip really sort of falls off. Arthritic conditions, of course, can wax and wane and come and go. He obviously had problems before he fell. He likely fell on his hip at least at some point. And in the medical, really for almost a year, we don't get into any significant complaints saying, my left hip. It's my back. It's my aches and pains. And in Dr. Brunt's case, it's unrelated at all to the left hip. There are, I believe, two visits to Dr. Brunt's office following the fall prior to seeing Dr. Lux. Well, the left hip is not even mentioned, not to mention the fact the fall at work is not even mentioned. Arthritis is a thing that does wax and wane and come and go. The gentleman needed a left hip, and he ultimately got the care, fortunately, but there's just not enough evidence to link that incident, assuming for the moment it was a work-related accident, just moving to causal connection. There's not enough to link that need for that surgery that Dr. Lux performed and that fall in addition to the fact the fall does not appear to be a work-related accident. If there's no questions, I'll conclude. Thank you, Counsel. Counsel, you may reply. Just one more point with regard to accident. If this was any other stairway at Respondent's Steel Mill, for my client to say, I slipped on the steps, there wouldn't be a reasonable inference that water was the cause of the fall. There was with regard to the Nash Street locker room, where the men take showers at quitting time, and the time of his accident was at 4 o'clock at quitting time. With regard to the two witnesses, the accident report. Did he testify about all that, that that's where the showers were? Yes, yes, Your Honor, he did. He testified that the men take showers at the work, and it's well known that at that particular time of day, that there could be water on the steps because of that. With regard to the two witnesses, the act tells claimants that they must file a notice, or they must give notice of an injury within 45 days after an accident. My client gave that notice that day. And the reason that they're supposed to give that notice within that timely 45 days is so that the employer can investigate. And I would ask you to ask yourselves, is it reasonable that if these two witnesses were there at the time of the accident, that the respondent's people didn't talk to them? And if those two people had something to say about the fact that there was nothing wrong with those steps, if there was some way to defeat liability for a worker's compensation claim from my client, that they wouldn't have called those two folks to testify in this case, particularly since they were employees of the respondent? Well, can we announce a decision that basically decides that they must have been favorable to the client, to the claimant, and therefore shift the burden here? No, Your Honor. I'm just asking you to ask yourself whether the inferences drawn by the commission were reasonable in this case based on this evidence and the fact that these witnesses were not called by the respondent. With regard to causal connection, my client did treat after the accident. In fact, the September 22nd office visit for physical therapy, the therapist noted that he had a contusion that was starting to heal. So there's definitely proof that he fell onto his left hip. He did see Dr. Bruntz on several occasions after the accident. Part of the time there were complaints about the hip. He treated with Dr. King, the chiropractor, who saw that his condition was getting worse and that he needed to see an orthopedic person, and that's why he went to see Dr. Lux in December. Do we know whether these two witnesses were still the employee of U.S. Steel on the day of the arbitration hearing? That is not in the record, Your Honor. Well, then how can we draw the adverse inference if we don't know that they still had control? We can't draw the inference without knowing that they had control. That is a foundational requirement, Your Honor. I see your point, Your Honor. With regard to the causal connection, we believe that the arbitrator and commission's reliance on Dr. Nagolsky's opinion, particularly his opinion that this man was a surgical candidate for hip replacement back in 2006, is simply not supported by the records in this case. If you look at the consult letter from Dr. Sheridan, he talked about the fact that they had discussed surgery, including hip resurfacing type surgery, but he told or reported to Dr. Bruntz at that point in time that this man wasn't ready for surgery at that point. He simply wasn't a surgical candidate at this point in time, back in 2006. So I think Dr. Nagolsky's opinion, which was on a records review as opposed to an IME, I think that portion of his opinion is simply not supported by the evidence. After the accident, he continued to have problems. In fact, he testified that walking became more and more difficult for him. His symptoms did progress. Granted, Dr. Lux testified that arthritis, skin wax, and waning, he got a little bit of help. But if you look at the physical therapy discharge summary, they said he only got minimal recovery or aid from the physical therapy course of treatment that he had. So we would ask you to reverse the commission's decision on accident arising out of, as well as causal connection, and to remand this case to the commission for a determination of my client's claim for medical benefits, TTD, and permanency with regard to the left leg. Thank you very much. Thank you, counsel, both for your arguments. This matter will be taken under advisement.